AMY JANE LONGO (Cal. Bar No. 198304)
Email: longoa@sec.gov
LUCEE S. KIRKA (Cal. Bar No. 121685)
Email: kirkal@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Katharine E. Zoladz, Associate Regional Director
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>PUNCH TV STUDIOS, INC., and JOSEPH COLLINS<br><br>Defendants. | Case No. 21-cv-07787<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a).

2. Defendants have, directly or indirectly, made use of the means or

instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this complaint.

3. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district. In addition, venue is proper in this district because Defendant Joseph Collins resides in this district and Defendant Punch TV Studios, Inc. has its principal place of business in this district.

## SUMMARY

4. The SEC brings this civil enforcement action against defendants Punch TV Studios, Inc. ("Punch TV") and its founder, chief executive officer and controlling shareholder, Joseph Collins ("Collins") (with Punch TV, "Defendants"), for violating the offering registration provisions of the federal securities laws. Between January 2018 until June 2020, Defendants raised more than $1.2 million from nearly 700 investors through two unregistered offerings of Punch TV's common stock. Neither offering was registered with the SEC, nor did either offering qualify for any exemption from registration.

5. This is not the first time Punch TV has violated the securities registration requirements. Defendants' unregistered offerings came on the heels of the company's 2018 settlement to an SEC administrative order (the "Suspension Order"), that halted an offering Punch TV commenced in 2016 under Securities Act Regulation A, 17 C.F.R. § 230.100 *et seq.* ("Regulation A"). The Suspension Order, which stopped Punch TV's offering for nine months and permitted it to resume only upon the satisfaction of certain undertakings, contained findings that Punch TV failed to file audited financial statements and other reports required to offer and sell securities under a qualified Regulation A offering statement.

6. Despite the Suspension Order, Defendants continued offering and selling

Punch TV's $1/share common stock in violation of the order and without satisfying any of the Securities Act registration offering exemptions.  Separately, Defendants embarked on a new, unregistered $5/share offering of Punch TV's common stock that did not comply with any exemptions from registration.  By not registering Punch TV's offerings, Defendants deprived investors of meaningful information that would be found in a registration statement that investors could use to assess the company's prospects.

7. By engaging in this conduct, Defendants violated, and may be continuing to violate, the securities registration provisions of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77f(a), (c).

8. The SEC seeks findings that the Defendants committed these violations; permanent injunctive relief, including permanently enjoining Defendants from, directly or indirectly, including, but not limited to, through any entity owned or controlled by each of them, participating in the issuance, purchase, offer, or sale of any security in an unregistered offering by an issuer; disgorgement and prejudgment interest thereon on a joint-and-several basis; civil monetary penalties; and bars on Defendants participating in the offering of penny stock.

## THE DEFENDANTS

9. **Punch TV Studios, Inc.** is a Delaware corporation formed in May 2014, with its principal place of business in Santa Fe Springs, California.  Punch TV has one class of securities outstanding, which is not registered with the SEC.  On or about January 9, 2018, Punch TV settled a prior SEC enforcement proceeding by agreeing to the Suspension Order.  *See* Order Making Findings, Specifying Procedures, and Temporarily Suspending Exemptions Pursuant to Section 3(b) of the Securities Act of 1933 and Regulation A Thereunder. https://www.sec.gov/litigation/admin/2018/33-10452.pdf.  On or about September 18, 2020, the California Department of Business Oversight issued a Consent Order against Punch TV and Collins ordering them to desist and refrain from selling securities in violation of California law.  *See*

https://dfpi.ca.gov/wp-content/uploads/sites/337/2020/09/Consent-Order-Punch-TV-Studios-Inc.pdf.

10. **Joseph Collins**, age 57, a resident of Santa Fe Springs, California, is the founder, sole board member, chief executive officer, secretary and controlling shareholder of Punch TV, and is the sole signatory on its bank accounts. Collins is not registered with the SEC in any capacity.

## THE ALLEGATIONS

11. Punch TV promotes itself as a global leader in media that is working to be a global producer and distributor of entertainment and original content.

12. Collins founded Punch TV in or around 2014 and is its sole control person and principal.

13. At all relevant times, Collins has prepared Punch TV's SEC filings and approved them for filing with the SEC.

14. At all relevant times, Punch TV has used and continues to use the website address https://punchtvstudios.com.

15. At all relevant times, Punch TV has used and continues to use the email addresses investor-relations@punchtvstudios.com, ir@punchtvstudios.com and punchtv@yahoo.com.

16. At all relevant times, Punch TV has used and continues to use a publicly available Facebook page, "Punch TV Studios."

17. At all relevant times, Collins has used and continues to use the email address josephcollins@punchtvstudios.com.

18. By February 2020, Punch TV had no employees besides himself.

19. As of December 2020, Punch TV had not licensed any of its content or generated any revenues from its content, had no revenues in 2020, and was not engaging in any production or broadcasting operations.

A. **Punch TV's 2016 Regulation A Offering**

20. In April 2016, Punch TV was qualified by the SEC's Division of

Corporation Finance ("Corp. Fin.") to conduct an exempt securities offering under Regulation A.

21.     Regulation A provides a two-tier exemption from registration for qualified public offerings. At the time of Punch TV's 2016 Regulation A offering, Tier 2 provided for an exemption for qualified offerings of up to $50 million in a 12 month period.

22.     Under Regulation A, the SEC's Division of Corp. Fin. qualifies offerings based on an issuer's offering statement filed with the SEC on Form 1-A. Pursuant to Regulation A, no sale of securities may be made pursuant to Regulation A until an offering statement for that sale has been qualified. 17 C.F.R. § 230.251(d)(2)(i)(A).

23.     Form 1-A requires that an offering statement for Tier 2 offerings contain audited financial statements. 17 C.F.R. § 239.90; General Instructions, Part FIS (c)(l)(ii) of Form 1-A.

24.     On March 30, 2016, Punch TV filed a Regulation A Offering Statement on Form 1-A with the SEC (the "2016 Offering Statement").

25.     The 2016 Offering Statement offered $50 million of common stock on a continuous basis in a Tier 2 offering under Regulation A, and was qualified by the Division of Corp. Fin. on April 5, 2016.

26.     From April 2016 to June, 2017, Punch TV raised at least $3 million from about 6,600 investors pursuant to its Regulation A offering, selling shares of its common stock for $1.00 per share.

27.     Punch TV engaged in a general solicitation of investors for its Regulation A offering.

28.     Investors generally executed subscription agreements to purchase shares of Punch TV's Regulation A offering.

**B.     The SEC's 2018 Suspension Order against Punch TV**

29.     On January 9, 2018, the SEC entered the Suspension Order against

1  Punch TV, temporarily suspending its Regulation A offering.

2      30.    Punch TV consented to the Suspension Order via an Offer of Settlement
3  executed by Collins on or about December 8, 2017.

4      31.    The Suspension Order contained findings that: (1) contrary to its
5  representations to the SEC in the Form 1-A, Punch TV's financial statements filed
6  with the SEC in connection with its Offering Statement were not audited, and (2)
7  Punch TV failed to file timely required periodic reports with the SEC subsequent to
8  the qualification of its Offering Statement.

9      32.    Pursuant to the Suspension Order, Punch TV undertook, among other
10 things, not to offer or sell securities under Regulation A for nine months after the
11 Order's entry, or through October 9, 2018.

12     33.    Pursuant to the Suspension Order, Punch TV further agreed that it "may
13 continue to offer and sell securities under Regulation A pursuant to the Offering
14 Statement previously qualified by the [Corp. Fin.] on April 5, 2016 only if, before
15 doing so, it files a post-qualification amendment ('PQA') with the [SEC], that PQA is
16 qualified by [Corp. Fin.], and Punch TV complies with all applicable Regulation A
17 requirements; or Punch TV may offer and sell securities under Regulation A pursuant
18 to a new offering statement only if, before doing so, it files the new offering
19 statement on Form 1-A with the [SEC], that Form 1-A is qualified by [Corp. Fin.],
20 and Punch TV complies with all applicable Regulation A requirements."

21     34.    After the Suspension Order, Punch TV never filed a PQA with the SEC,
22 nor did it file any new offering statement on Form 1-A.

23     **C.**    **Defendants' Subsequent Unregistered Offers and Sales of Securities**

24     35.    Despite the Suspension Order, Defendants continued to offer and sell
25 Punch TV's $1/share common stock in purported reliance on Regulation A, both
26 during and after the suspension period.

27     36.    Additionally, Defendants conducted a new offering of $5/share Punch
28 TV common stock in purported reliance on an exemption under Securities Act

Regulation D, 17 C.F.R. § 230.501 *et seq.* ("Regulation D").

37. Defendants took no steps to register either offering, nor did either offering satisfy any exemption from registration.

### 1. Defendants Continued to Offer and Sell Punch TV's $1/Share Stock During and After the Temporary Suspension

38. The Suspension Order prohibited Punch TV from offering or selling its securities in reliance on Regulation A during the period January 10, 2018 through October 9, 2018 (the "suspension period").

39. Between January 10, 2018 and June 2020, Defendants raised approximately $681,924 from over 660 investors by the sale of Punch TV's $1/share common stock.

40. Of this amount, Defendants raised approximately $314,213 during the suspension period, and approximately $367,711 after the suspension period.

41. No registration statement was in effect for Defendants' offering of Punch TV's $1/share stock, and no exemption from registration applied.

42. In offering and selling Punch TV's $1/share stock, Defendants engaged in a general solicitation of investors and failed to take reasonable steps to verify that the individuals who purchased securities were accredited investors.

43. Defendants relied on the statements made by investors as to their accredited status and did not independently verify the accreditation status of Punch TV's investors.

44. Defendants offered and sold Punch TV's $1/share stock to investors in multiple states.

45. Punch TV was the issuer of the $1/share stock, and directly offered and sold its shares to investors by email and through phone calls.

46. Collins directly offered and sold the Punch TV $1/share stock.

47. Collins personally solicited existing Punch TV shareholders for the $1/share offering by telephone.

48. Through his conduct, Collins was a necessary participant and a substantial factor in the offer and sale of Punch TV's $1/share stock.

49. Investors paid for their shares by check, money order, or by using credit or debit cards.

50. Defendants sold the $1/share stock to one or more unaccredited investors.

51. During the suspension period, in early 2018, Punch TV continued to reference publicly its sale of $1/share common stock consistent with the provisions of its Regulation A Offering.

52. For example, Punch TV's Regulation A 2016 Offering Statement remained on its website until the end of January 2018.

53. During the suspension period, as late as January 30, 2018, Punch TV's website contained a disclaimer stating that Punch TV was offering securities through the use of an offering statement qualified by the SEC under Regulation A.

54. During the suspension period, through at least the end of February, 2018, Punch TV's website, in a section entitled, "Invest in Punch," contained an investor packet with a message from Collins stating that Punch TV had been qualified by the SEC to raise $50 million at $1.00 per share through its initial public offering.

55. During the suspension period, as late as May 5, 2018, Punch TV's Facebook page featured a post stating that: "Punch TV prepares to close initial stock offering, a $1 investment can change your life."

56. During the suspension period, Defendants sold $1/share stock to at least 17 new shareholders.

57. At least nine of the new investors completed their purchases via the same subscription agreement that Punch TV used for its Regulation A offering prior to the suspension order.

58. Collins approved the use of the subscription agreement.

59. During and after the suspension period, Defendants sold $1/share stock

to nearly 650 existing shareholders.

60. In soliciting existing Punch TV shareholders after the Suspension Order, Punch TV generally asked existing shareholders to confirm the number of shares they purchased as listed in a document titled, "Amendment to Subscription Agreement," which was prepared by Punch TV to memorialize the shareholders' purchase of additional $1/share stock.

61. The amendment stated that Punch TV and the investors "executed a Subscription Agreement …[w]herein [i]nvestor purchased certain shares of common stock in Punch" and then "subsequently purchased additional shares of common stock in Punch."

62. The amendment described each purchase of shares after the Suspension Order as a "subsequent purchase," and provided the date, number of shares, and investment amount.

63. Defendants' offer and sale of Punch TV's $1/share common stock during the suspension period violated the Suspension Order, which prohibited any offers or sales in reliance on Regulation A during the suspension period.

64. Defendants' offer and sale of Punch TV's $1/share common stock after the suspension period ended violated the Suspension Order, because Punch TV did not complete the undertakings the Suspension Order required for Punch TV to offer and sell securities in reliance on Regulation A after the suspension ended.

65. Defendants' offer and sale of Punch TV's $1/share common stock after the suspension period did not qualify for any exemption from registration under Regulation A or any other exemption.

66. Collins has stated that he hopes to re-qualify Punch TV for a Regulation A exemption so that it can raise additional capital through another Regulation A offering.

### 2.   Defendants' Unregistered $5/Share Offering

67. Between March 2018 and April 2019, Defendants raised at least

$519,230 from approximately 28 investors by the sale of Punch TV's common stock at $5/share.

68. No registration statement was in effect for Defendants' offering of Punch TV's $5/share stock, and no exemption from registration applied.

69. In offering and selling Punch TV's $5/share stock, Defendants engaged in a general solicitation of investors and failed to take reasonable steps to verify that the individuals who purchased securities were accredited investors.

70. Defendants relied on the statements made by investors as to their accredited status and did not independently verify the accreditation status of Punch TV's investors.

71. Defendants offered and sold Punch TV's $5/share stock to investors in multiple states.

72. Punch TV was the issuer of the $5/share stock, and directly offered and sold its shares to investors through its website, on social media, by email and through phone calls.

73. Collins directly offered and sold Punch TV $5/share stock.

74. Collins personally solicited prospective investors for the $5/share offering by telephone.

75. Collins was ultimately responsible for deciding whether or not to accept prospective investors' investments in Punch TV under the Form D offering.

76. Through his actions, Collins also was a necessary participant and a substantial factor in the offer and sale of Punch TV's $5/share stock.

77. On April 11, 2018, Punch TV filed a Form D with the SEC, giving notice that it was conducting an offering of up to $1 million of shares at $5/share under Rule 506(c), listing the first date of sale as April 1, 2018.

78. Collins prepared the Form D, and approved its filing with the SEC.

79. Punch TV used its website to solicit prospective investors for its $5/share offering.

80. Visitors to the website were permitted to access details of the offering without any restrictions.

81. As of approximately January 30, 2018, the website stated that "Punch TV Studios is currently raising $100 million in direct funding. We are prepared to sell 20 million shares of stock at $5 per share."

82. As of approximately April 13, 2018, the website stated that "Punch TV is Currently Raising $500 Million in Direct Funding at $5.00 per Share."

83. A brochure available on Punch TV's website in or about at least November 2018, which Collins prepared, advertised that Punch TV was selling 10 million shares at $5/share under Regulation D.

84. Promotional materials posted on Punch TV's website described the offer of shares under Regulation D as late as March 2019.

85. As of at least August 2019, Punch TV's website continued to include a publicly available link to an "Invest Now" page containing links for U.S. and international investors.

86. As of at least June 2021, Punch TV's website included links marked "U.S. and Canadian Investors Only" and "International Investors Invest Here."

87. Collins prepared the promotional materials on Punch TV's website.

88. Collins has admitted that individuals could purchase Punch TV's $5/share common stock on Punch TV's website.

89. Defendants also used social media to solicit prospective investors for Punch TV's $5/share offering.

90. Punch TV ran a February 2018 Facebook advertisement soliciting potential investors to "invest in Punch TV Studios, $5 a share."

91. Punch TV's and Collins's Facebook pages, between approximately April 2018 and May 2018 and February 2018 and June 2018, respectively, solicited investors to buy Punch TV shares at $5.00.

92. In or around February 2018, Collins prepared and appeared in a

YouTube video titled, "Why Punch TV Studios will make a Billion Dollars," which offered potential investors a chance to "Invest in the Magic" at "$5.00 per share" by investing in Punch TV.

93. On or about May 15, 2018, Collins announced a NASDAQ position in posts on Punch TV's Facebook page and in a press release by Punch TV.

94. Defendants purchased a lead list to make cold calls to solicit for the $5/share offering, using a script to pitch the offering to prospective investors.

95. Defendants also solicited existing investors for the $5/share offering by phone.

96. Certain investors who purchased the $5/share offering executed subscription agreements with Punch TV.

97. Collins approved the use of the subscription agreement.

98. Defendants sold the $5/share offering to one or more unaccredited investors.

99. Defendants' offer and sale of Punch TV's $5/share common stock did not qualify for any exemption from registration under Regulation D or any other exemption.

## FIRST CLAIM FOR RELIEF

### Unregistered Offer and Sale of Securities

### Violations of Sections 5(a) and 5(c) of the Securities Act

### (against Defendants Punch TV and Collins)

100. The SEC realleges and incorporates by reference paragraphs 1 through 101 above.

101. As alleged above, Defendants Punch TV and Collins offered and sold securities, in the form of Punch TV's $1/share and $5/share common stock, to investors in interstate commerce, without filing a registration statement with the SEC, and without qualifying for any exemption from registration.

102. By engaging in the conduct described above, Defendant Punch TV and

Collins, and each of them, directly or indirectly, singly and in concert with others, has made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer to sell or to sell securities, or carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities for the purpose of sale or for delivery after sale, when no registration statement had been filed or was in effect as to such securities, and when no exemption from registration was applicable.

103.   By engaging in the conduct described above, Defendants Punch TV and Collins have violated, and unless restrained and enjoined, are reasonably likely to continue to violate, Sections 5(a) and 5(c), 15 U.S.C. §§ 77e(a) & 77e(c).

## **PRAYER FOR RELIEF**

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

### II.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Punch TV and Collins, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c)], and permanently enjoining Punch TV and Collins from, directly or indirectly, including, but not limited to, through any entity owned or controlled by each of them, participating in the issuance, purchase, offer, or sale of any security in an unregistered offering by an issuer.

### III.

Order Defendants to disgorge, jointly and severally, all funds received from their illegal conduct, together with prejudgment interest thereon, pursuant to

Securities Exchange Act of 1934, Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)].

### IV.

Order Defendants to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)].

### V.

Enter an order against Defendants, pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), prohibiting them from participating in an offering of penny stock.

### VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### VII.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: September 30, 2021

*/s/ Amy Jane Longo*
Amy Jane Longo
Lucee S. Kirka
Attorneys for Plaintiff
Securities and Exchange Commission